1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   Antonio Undrell Goines,                )   CIV 11-2584-PHX-PGR (MHB)
                                            )
10              Petitioner,                 )   **REPORT AND RECOMMENDATION**
                                            )
11  vs.                                     )
                                            )
12  Charles L. Ryan, et al.,                )
                                            )
13              Respondents.                )
                                            )
14  _____ )

15  TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

16          Petitioner Antonio Undrell Goines, who is confined in the Arizona State Prison

17  Complex-Eyman, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.

18  § 2254 (Doc. 1).  Respondents have filed an Answer (Doc. 11), and Petitioner has filed a

19  Reply and Supplement containing over 500 pages of nondescript exhibits which Petitioner

20  attempts to use to support the merits of each of the claims set forth in his habeas petition

21  (Docs. 17, 19).

22                            **BACKGROUND**[1]

23          The State of Arizona charged Petitioner with one count of sexual conduct with a

24  minor, a class 2 felony, and a dangerous crime against children (Count 1) and two counts of

25  child prostitution (Counts 2 and 3), class 2 felonies, with Count 2 alleged to be a dangerous

26

27

28  ――――――――――――――

            [1] Unless otherwise noted, the following facts are derived from the exhibits submitted
    with Doc. 11 – Respondents' Answer.

crime against children.[2] (Exh. A.) A jury acquitted Petitioner of Count 1 and could not reach a verdict regarding Count 3. (Exh. B.) The jury returned a guilty verdict on Count 2, and the trial court sentenced Petitioner to the presumptive term of 20 years' imprisonment. (Exh. B.) The jury reached these verdicts after the parties had presented the following evidence.

Regarding Counts 1 and 2, D.H. met Petitioner when she was 13-years-old when a friend took her to Petitioner's apartment. (Exh. C at 102-05.) According to her testimony, between October 2005 and January 2006, D.H. worked as a prostitute and Petitioner was her pimp. (Exh. C at 110.) D.H. stated that Petitioner instructed her on the "rules" of being a prostitute, including: (1) never do business with African-Americans because "they might be pimps;" (2) charge $50 for oral sex, $100 for intercourse, and $500 to $1000 for anal sex; and (3) that if she was stopped by the police to tell them she was waiting for her boyfriend, was going home, or to the store. (Exh. C at 113-114.) While D.H. stayed at Petitioner's home, D.H. testified that Petitioner had sex with her. (Exh. C at 133.)

As to Count 3, in December 2005, A.A., who was 17 at the time, met Martell Franklin (aka "One Way") at a Phoenix-area mall. (Exh. D.) Franklin approached her and invited her to a party he was having at Petitioner's home located at 43rd Avenue and Thomas Road. (Exh. D at 150-54, 165-66.) After arriving at Petitioner's home, A.A. used marijuana and methamphetamine. (Exh. D at 162-63.) A.A. testified that she spent the night at Petitioner's home, and the next day, Petitioner recruited her to work as a prostitute. (Exh. D at 164.) Although A.A. testified that she did not want to be a prostitute, she nevertheless began working for Franklin as a prostitute after Franklin and Petitioner slapped her, threatened to kill her, and provided her more drugs. (Exh. D at 164-68.) She worked for Franklin for two days, and then returned to her own home. (Exh D at 169.) She, however, needed to return to Petitioner's home to retrieve her wallet. (Exh. D at 169.) According to A.A., she was not thinking clearly because Franklin had taken away her medication for bi-polar disorder, and because she had smoked marijuana and methamphetamine. (Exh. D at 163, 169-70.) After

---

[2] Counts 1 and 2 named D.H. as the victim, and Count 3 named A.A. (Exh. B.)

1   returning to Petitioner's home, Petitioner became her pimp and she prostituted for an

2   additional four days before leaving again.  (Exh. D at 170-73; Exh. C at 9, 23.)

3         After testimony and argument, the jury subsequently convicted Petitioner on Count

4   2, and the trial court sentenced him to the presumptive term of 20 years' imprisonment.

5   (Exh. B.)

6         Petitioner filed a direct appeal in the Arizona Court of Appeals, raising three claims:

7   (1) the trial court erred in allowing the State to present evidence regarding the specific nature

8   of his prior felony conviction for attempted pandering of a child; (2) the trial court committed

9   fundamental error in allowing testimony regarding his "PIMP" tattoo; and (3) the trial court

10  abused its discretion in allowing testimony relating to allegations of prostitution involving

11  Petitioner and J.L.  (Exh. B.)

12        On June 26, 2008, the Arizona Court of Appeals rejected Petitioner's claims finding

13  that: (1) the trial court did not abuse its discretion in allowing the State to present evidence

14  regarding the specific nature of Petitioner's prior conviction because Petitioner "opened the

15  door" during his direct examination, and thus, the State was entitled to rebut his testimony

16  to impeach Petitioner's credibility; (2) the trial court did not commit fundamental error in

17  failing to preclude evidence regarding Petitioner's "PIMP" tattoo because (i) it was relevant

18  to Petitioner's intent and plan to engage in the charged offenses of child prostitution, and (ii)

19  Petitioner had failed to establish prejudice because, at trial, Petitioner admitted to being a

20  pimp; and (3) Petitioner's claim that testimony regarding J.L.'s prostitution was precluded

21  because he invited any error by presenting testimony that he was J.L.'s pimp.  (Exh. B)

22  Petitioner filed a petition for review in the Arizona Supreme Court, which was denied on

23  October 21, 2008.  (Doc. 1, Exh. 2 – Petitioner's Direct Appeal Exhibits.)

24        On August 7, 2008, Petitioner filed a notice of post-conviction relief.  (Exh. E.)

25  Petitioner's post-conviction counsel thereafter filed a "Notice of Completion of Post-

26  Conviction Review" avowing that he searched the record and could not find any meritorious

27  claims.  (Exh. F.)

28

Petitioner then filed a *pro per* petition for post-conviction relief, raising the following claims: (1) the State improperly introduced evidence that was obtained by an unconstitutional search and seizure (Claim 1); (2) the trial court improperly amended the indictment to conform to the evidence presented at trial (Claim 2); (3) trial counsel rendered ineffective assistance by failing to: (i) "investigate this case completely and thoroughly," and interview and call alibi witnesses, (ii) provide Petitioner sufficient access to discovery at trial, (iii) object to the evidence that had been improperly obtained via an unconstitutional search and seizure, (iv) object to a jury instruction that the prosecution was not required to prove the exact date of the offense, and (v) request an evidentiary hearing regarding the victim's sexual history (Claim 3); (4) prosecutorial misconduct for the failure to disclose evidence (Claim 4); (5) judicial misconduct "[b]y allowing the prosecutor to try this case without restrictions," "[b]y allowing the prosecutor to file untimely motions," and "[b]y allowing the prosecutor to use tainted testimony" (Claim 5); and (6) post-conviction counsel rendered ineffective assistance by failing to raise the claims Petitioner ultimately raised in his *pro per* petition (Claim 6).  (Exh. G.)

On July 8, 2009, the state court dismissed the post-conviction proceedings.  (Exh. H.) The court first found that Claims 1, 2, 4 and 5 were precluded under state law.  (Exh. H.) The court reasoned that, because the alleged errors had not been raised in any pre- or post-trial proceeding, the issues had not been preserved, and were thus waived pursuant to Rule 32.2(a)(3).  (Exh. H.)  In regards to Claim 3, the court found that Petitioner had failed to overcome the strong presumption that trial defense counsel had provided effective assistance. (Exh. H.)  The court noted that, regarding the claim relating to the alleged alibi witnesses, the record reflected that trial defense counsel interviewed at least two of the listed witnesses, and yet chose not to call them at trial; thus reflecting a strategic choice not to call the witnesses, which supported a finding that the witnesses did not support an alibi defense. (Exh. H.)  Moreover, Petitioner had failed to provide any affidavits or other evidence setting forth what testimony the witnesses would have provided.  (Exh. H.)  Regarding Petitioner's remaining ineffective assistance of trial counsel claims, the court found that Petitioner had

failed to sufficiently support a claim of deficient performance, let alone establish resulting prejudice.  (Exh. H.)

Finally, the court rejected Petitioner's claim of ineffective assistance of post-conviction counsel reasoning that appointed counsel had avowed that he had reviewed the record and found no colorable claim, and Petitioner had failed to rebut the presumption that counsel's conduct fell within the wide range of reasonable representation.  (Exh. H.)

Thereafter, Petitioner filed a petition for review.  (Exh. I.)  The Arizona Court of Appeals denied review on February 25, 2011.  (Exh. J.)  And, the Arizona Supreme Court denied review on August 8, 2011.  (Exhs. K, L.)

On December 28, 2011, Petitioner filed his pending Petition for Writ of Habeas Corpus.  (Doc. 1.)  In the habeas petition, Petitioner raises eight grounds for relief:

(1)    Petitioner's due process rights were violated when the trial court admitted evidence of Petitioner's prior conviction;

(2)    Petitioner's right to a fair trial was violated when the trial court allowed the introduction of evidence relating to allegations of prostitution involving J.L. and by allowing testimony regarding Petitioner's "PIMP" tattoo;

(3)    Petitioner's Fourth Amendment rights were violated when the trial court admitted evidence obtained by an illegal search and seizure;

(4)    The trial court violated Petitioner's due process rights when it amended the indictment without legal authority or jurisdiction;

(5)    Petitioner was denied effective assistance of counsel in violation of the Sixth Amendment;

(6)    The State failed to disclose evidence thus violating Petitioner's due process rights;

(7)    The trial court violated Petitioner's due process rights when it permitted untimely motions to be filed by the prosecutor, allowed the use of tainted testimony, and permitted the prosecutor to try the case without restrictions; and

(8)    Petitioner's post-conviction counsel was ineffective in violation of the Sixth Amendment.

**DISCUSSION**

In their Answer, Respondents contend that Ground Four fails to state a basis for federal habeas relief; Grounds Three, Six, and Seven are procedurally defaulted; and

1  Grounds One, Two, Five, and Eight fail on the merits.  As such, Respondents request that the

2  Court deny and dismiss Petitioner's habeas petition with prejudice.

3  **A.    Non-Cognizable Claim**

4      In Ground Four of his habeas petition, Petitioner claims that the trial court violated

5  his due process rights when it amended the indictment without legal authority or jurisdiction.

6  (Doc. 1 at 9.)   The Supreme Court has repeatedly stated that "[t]he habeas statute

7  unambiguously provides that a federal court may issue a writ of habeas corpus to a state

8  prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or

9  treaties of the United States.'"  Wilson v. Corcoran, ___ U.S. ___, ___, 131 S.Ct. 13, 15, 178

10 L.Ed.2d 276 (2010) (quoting 28 U.S.C. § 2254(a)).  Accordingly, "[a] habeas petition must

11 allege the petitioner's detention violates the constitution, a federal statute, or a treaty."

12 Franzen v. Brinkman, 877 F.2d 26 (9th Cir. 1989); see also Estelle v. McGuire, 502 U.S. 62,

13 67 (1991) ("federal habeas corpus does not lie for errors of state law") (quoting Lewis v.

14 Jeffers, 497 U.S. 764, 780 (1990)).  Additionally, a habeas petitioner cannot "'transform a

15 state law issue into a federal one merely by asserting a violation of due process.'"  Poland

16 v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999) (quoting Langford v. Day, 110 F.3d 1380, 1389

17 (9th Cir. 1996)).

18     Petitioner's challenge to the procedures used to amend the indictment involves the

19 interpretation and application of Arizona law and is not cognizable on federal habeas corpus

20 review.  While the Due Process Clause guarantees defendants a fair trial, "it does not require

21 the States to observe the Fifth Amendment's provision for presentment or indictment by a

22 grand jury."  Alexander v. Louisiana, 405 U.S. 625, 633 (1972); see also Hurtado v.

23 California, 110 U.S. 516, 534-35, 538 (1884) (indictment by grand jury is not included in the

24 due process guarantees of the Fourteenth Amendment that apply to state criminal

25 defendants).  Thus, Ground Four fails to constitute a basis for federal habeas relief.  See Roe

26 v. Baker, 316 F.3d 557, 570 (6th Cir.  2002) (beyond notice, a claimed deficiency in a state

27 criminal indictment is not cognizable on federal collateral review); Bae v. Peters, 950 F.2d

28 469, 478-79 (7th Cir. 1991) ("Since Bae was not entitled to a grand jury indictment, his claim

that the indictment's amendment deprived him of his right to a grand jury indictment states no federal claim upon which to grant a writ of habeas corpus."). The Court will recommend that Ground Four be denied and dismissed.

**B.    Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because

its factual basis was presented to the state courts on state law grounds – a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

Additionally, under the independent state grounds principle, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32. The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both

"independent"[3] and "adequate"[4] – review of the merits of the claim by a federal habeas court is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S. at 264 n.10).

Furthermore, a subsequent "silent" denial of review by a higher court simply affirms a lower court's application of a procedural bar. See Ylst, 501 U.S. at 803 ("where ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits").

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred

---

[3] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[4] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

1   from habeas review when not first raised before state courts and those courts "would now

2   find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir.

3   2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only

4   when a state court has been presented with the federal claim,' but declined to reach the issue

5   for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally

6   barred.'") (quoting Harris, 489 U.S. at 263 n.9).

7           In Arizona, claims not previously presented to the state courts via either direct appeal

8   or collateral review are generally barred from federal review because an attempt to return to

9   state court to present them is futile unless the claims fit in a narrow category of claims for

10   which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding

11   claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar),

12   32.9(c) (petition for review must be filed within thirty days of trial court's decision).

13   Because Arizona's preclusion rule (Rule 32.2(a)) is both "independent" and "adequate,"

14   either its specific application to a claim by an Arizona court, or its operation to preclude a

15   return to state court to exhaust a claim, will procedurally bar subsequent review of the merits

16   of that claim by a federal habeas court. See Stewart, 536 U.S. at 860 (determinations made

17   under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart,

18   241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default

19   rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on

20   other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d

21   923, 931-32 (rejecting argument that Arizona courts have not "strictly or regularly followed"

22   Rule 32 of the Arizona Rules of Criminal Procedure); State v. Mata, 916 P.2d 1035, 1050-52

23   (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

24           The federal court will not consider the merits of a procedurally defaulted claim unless

25   a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for

26   his noncompliance and actual prejudice.  See Schlup v. Delo, 513 U.S. 298, 321 (1995);

27   Coleman, 501 U.S. at 750-51;  Murray, 477 U.S. at 495-96.  Pursuant to the "cause and

28   prejudice" test, a petitioner must point to some external cause that prevented him from

following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

In Ground Three, Petitioner claims that his Fourth Amendment rights were violated when the trial court admitted evidence obtained by an illegal search and seizure. (Doc. 1 at 8.) In Ground Six, Petitioner contends that the State failed to disclose evidence thus violating Petitioner's due process rights. (Doc. 1 at 12-14.) And, in Ground Seven, Petitioner argues that the trial court violated Petitioner's due process rights when it permitted untimely motions to be filed by the prosecutor, allowed the use of tainted testimony, and permitted the prosecutor to try the case without restrictions. (Doc. 1 at 15-16.) And, in his petition for post-conviction relief, Petitioner claimed, inter alia, that the State improperly introduced evidence that was obtained by an unconstitutional search and seizure (Claim 1); prosecutorial misconduct for the suppression of and failure to disclose evidence (Claim 4); and judicial misconduct "[b]y allowing the prosecutor to try this case without restrictions," "[b]y allowing the prosecutor to file untimely motions," and "[b]y allowing the prosecutor to use tainted testimony" (Claim 5). (Exh. G.)

Thus, Petitioner arguably presented the claims he now presents in Grounds Three, Six, and Seven to the state courts during his post-conviction relief proceedings. The state court, however, determined that these claims were waived and precluded under Ariz.R.Crim.P. 32.2(a)(3). The court's conclusion that Petitioner's claims were waived and precluded

1   constitutes an independent and adequate state-law bar to federal habeas review.  See Stewart,

2   536 U.S. at 860 (determinations made under Arizona's procedural default rule are

3   "independent" of federal law); Smith, 241 F.3d at 1195 n.2 ("We have held that Arizona's

4   procedural default rule is regularly followed ["adequate"] in several cases.") (citations

5   omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz,

6   149 F.3d at 931-32 (rejecting argument that Arizona courts have not "strictly or regularly

7   followed" Rule 32 of the Arizona Rules of Criminal Procedure).  Accordingly, because the

8   state court's use of a procedural bar to dismiss Petitioner's request for post-conviction relief

9   rests on independent and adequate state grounds, this Court is precluded from reviewing

10  Petitioner's claims absent a showing of cause and prejudice or a fundamental miscarriage of

11  justice.  See, e.g., Cook v. Schriro, 538 F.3d 1000, 1025-26 (9th Cir. 2008) ("Where a state

12  prisoner's federal claim is waived or precluded by violation of a state procedural rule [such

13  as Ariz.R.32.2(a)(3)], it is procedurally defaulted unless the prisoner can demonstrate cause

14  and prejudice.").[5]

15      In his traverse, Petitioner simply reargues the merits of his claims and fails to

16  demonstrate, much less allege, cause and prejudice, or a fundamental miscarriage of justice,

17  to excuse the procedural default.  To the extent, however, Petitioner's claim alleged in

18  Ground Eight (ineffective assistance of post-conviction counsel) could be argued as cause

19  to overcome the procedural default, any such argument fails.  "Ineffective assistance of

20  counsel is cause for procedural default, but '[a]ttorney error short of ineffective assistance

21  of counsel does not constitute cause.'"  Vansickel v. White, 166 F.3d 953, 958 (9th Cir. 1999)

---

[5]  The Court also notes that claims involving violations of Fourth Amendment rights are not cognizable in federal habeas proceedings as long as the prisoner had a full and fair opportunity to litigate those issues in state court.  See Stone v. Powell, 428 U.S. 465, 480-82, 494-95 (1976); Villafuerte v. Stewart, 111 F.3d 616, 627 (9th Cir. 1997); Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).  Whether or not the state prisoner actually did so, or whether or not the state courts correctly decided the issue, is irrelevant on federal habeas review.  See Ortiz-Sandoval, 81 F.3d at 899.  Here, nothing prevented Petitioner from raising his Fourth Amendment claim in the state courts, either at trial or on direct appeal.  Therefore, federal habeas review is unavailable with respect to Ground Three.  See Stone, 428 U.S. at 480-82.

1   (quoting Murray, 477 U.S. at 492).  The Ninth Circuit has recognized that "'the mere fact

2   that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the

3   claim despite recognizing it, does not constitute cause for a procedural default.'" Poland, 169

4   F.3d at 587 (holding that appellate counsel's failure to raise several issues on appeal did not

5   constitute cause for procedural default) (quoting Murray, 477 U.S. at 486).  Moreover, even

6   if counsel's failure to raise the claims alleged in Grounds Three, Six, and Seven in

7   Petitioner's petition for post-conviction relief amounted to cause, Petitioner cannot establish

8   prejudice since Petitioner raised these same claims in his pro per petition and the state court

9   determined that said claims were waived and precluded under Ariz.R.Crim.P. 32.2(a)(3).[6]

10          Therefore, any allegation of ineffective assistance of appellate counsel does not

11  overcome the procedural bar.  The Court will recommend that Grounds Three, Six, and

12  Seven be denied and dismissed.

13  **C.    Merits**

14          Pursuant to the AEDPA[7], a federal court "shall not" grant habeas relief with respect

15  to "any claim that was adjudicated on the merits in State court proceedings" unless the state

16  court decision was (1) contrary to, or an unreasonable application of, clearly established

17  federal law as determined by the United States Supreme Court; or (2) based on an

18  unreasonable determination of the facts in light of the evidence presented in the state court

19  proceeding.  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000)

20  (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard

21  of review).  "When applying these standards, the federal court should review the 'last

22  reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

23

24

---

25          [6]   Additionally, as will be discussed in the merits portion in this Report and
26  Recommendation, because "[t]here is no constitutional right to an attorney in state post-
27  conviction proceedings," there cannot be "constitutionally ineffective assistance of counsel
    in such proceedings." Coleman, 501 U.S. at 752.

28          [7]  Antiterrorism and Effective Death Penalty Act of 1996.

1    A state court's decision is "contrary to" clearly established precedent if (1) "the state

2    court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

3    or (2) "if the state court confronts a set of facts that are materially indistinguishable from a

4    decision of [the Supreme Court] and nevertheless arrives at a result different from [its]

5    precedent." Williams, 529 U.S. at 404-05.  "A state court's decision can involve an

6    'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule

7    but then applies it to a new set of facts in a way that is objectively unreasonable, or 2)

8    extends or fails to extend a clearly established legal principle to a new context in a way that

9    is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

10       **1.    Ground One**

11       In Ground One, Petitioner claims that his due process rights were violated when the

12   trial court admitted evidence of his prior conviction.  (Doc. 1 at 6.)  On direct appeal,

13   Petitioner argued that the trial court erred in allowing the State to present evidence

14   concerning the nature of his prior felony conviction in Nevada.  Specifically, he contended

15   that he did not "open the door" to admitting this evidence and that the trial court should have

16   weighed the prejudicial effect of the evidence against its probative value under Arizona Rule

17   of Evidence ("Rule") 609(a) instead of Rule 403.  (Doc. 11, Exh. B.)

18       According to the record, prior to trial, the trial court ruled that evidence of Petitioner's

19   prior conviction could be admitted at trial but the State would be prohibited from addressing

20   the nature of the conviction.  The court noted, however, that the prior conviction would be

21   "unsanitized" if Petitioner's testimony brought the nature of the prior conviction into issue.

22   (Doc. 11, Exh. B.)

23       The record reflects that Petitioner testified on direct examination that, although he

24   pimped J.L., an adult woman, he "don't [sic] mess with minors."  He also stated that the

25   allegations of child prostitution in this case made him feel "[j]ust terrible" adding, "I just

26   don't believe in it."  He further testified that he would not allow his fellow pimps to

27   prostitute children out of his house because he "was very, very upset when it came to these

28   guys having children."  (Doc. 11, Exh. B.)

1    Based on this testimony, the prosecutor requested permission to unsanitize Petitioner's

2    Nevada conviction.   The trial court agreed that Petitioner opened the door.   The court

3    referenced Rule 403, and although admitting it was a "close call," ruled that the prejudicial

4    effect of the evidence did not substantially outweigh its probative value.   Accordingly,

5    consistent with its previous ruling, the court allowed the State to elicit testimony from

6    Petitioner on cross-examination that he was previously convicted of attempted pandering of

7    a child.  (Doc. 11, Exh. B.)

8        In its decision, the appellate court stated, in pertinent part:

9        As a preliminary matter, we note Rule 609(a) does not require a prior
         conviction be "sanitized" when admitted to impeach a witness's credibility.
10       *See State v. Harrison*, 195 Ariz. 28, 33, ¶ 23, 985 P.2d 513, 518 (App. 1998);
         *but cf. State v. Beasley*, 205 Ariz. 334, 338-40, ¶¶ 16-27, 70 P.3d 463, 466-69
11       (App. 2003). Before admitting the conviction, however, the court must
         determine that the evidence – whether sanitized or not – has a probative value
12       greater than its prejudicial effect. *Supra* n.2.

13       Here, Defendant clearly raised on direct examination the issue of his purported
         disapproval of child prostitution in order to disprove the allegations he pimped
14       A.A. and D.H. Thus, he opened the door, and the State was entitled to rebut
         this testimony to impeach Defendant's credibility with evidence of
15       Defendant's prior conviction for attempted pandering of a child. *State v.
         Tovar*, 187 Ariz. 391, 393, 930 P.2d 468, 470 (App. 1996) ("Once a defendant
16       has put certain activity in issue by ... denying wrongdoing, the government is
         entitled to rebut by showing that the defendant has lied.") (quoting *United
17       States v. Beverly*, 5 F.3d 633, 639 (2d Cir. 1993)).

18       With respect to the proper standard to be used in weighing the prior
         conviction's prejudicial effect against its probative value, Defendant points to
19       no authority, and we are unaware of any, finding a trial court abuses its
         discretion when it conducts analysis under Rule 403 rather than "[e]mploying
20       the less burdensome standard of Rule 609" when evaluating evidence
         admissible under Rule 609. Although the trial court found the nature of
21       Defendant's prior conviction was "highly prejudicial," the evidence was, in
         balance, more probative of Defendant's credibility in light of his testimony
22       that he disapproves of child prostitution. *See Harrison*, 195 Ariz. at 33, ¶ 21,
         985 P.2d at 518 (we view the evidence in the "light most favorable to its
23       proponent, maximizing its probative value and minimizing its prejudicial
         effect.") (quoting *State v. Castro*, 163 Ariz. 465, 473, 788 P.2d 1216, 1224
24       (App. 1989)).

25   (Doc. 11, Exh. B) (footnotes omitted).

26       As previously noted, in conducting habeas review, a federal court is limited to

27   deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

28   See <u>Estelle</u>, 502 U.S. at 67-68.  Thus, this Court is prohibited from reviewing whether "other

1   crimes" evidence was properly admitted by the state court pursuant to the Arizona Rules of

2   Evidence.  Instead, the admission of evidence at a state trial will form the basis for federal

3   habeas relief only when the evidentiary ruling renders a trial unfair in violation of a

4   petitioner's due process rights.  See Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.

5   1991).

6        The United States Supreme Court has "very narrowly" defined the category of

7   infractions that violate the due process test of fundamental fairness.  See Dowling v. United

8   States, 493 U.S. 342, 352 (1990).  Pursuant to this narrow definition, the Court has declined

9   to hold that evidence of other crimes or bad acts is so extremely unfair that its admission

10  violates fundamental conceptions of justice.  See Estelle, 502 U.S. at 75 & n.5 (stating that

11  Supreme Court was expressing no opinion as to whether a state law would violate due

12  process if it permitted the use of prior crimes evidence to show propensity to commit a

13  charged crime); Spencer v. Texas, 385 U.S. 554, 563-64 (1967) (rejecting the argument that

14  due process requires the exclusion of prejudicial evidence).  Thus, there is no clearly

15  established Supreme Court precedent which holds that a state court violates due process by

16  admitting propensity evidence in the form of other acts evidence.  See, e.g., Bugh v. Mitchell,

17  329 F.3d 496, 512-13 (6th Cir. 2003) (state court decision allowing admission of evidence

18  pertaining to petitioner's alleged prior, uncharged acts of child molestation was not contrary

19  to clearly established Supreme Court precedent because there was no such precedent holding

20  that state court violated due process by permitting propensity evidence in the form of other

21  bad acts evidence).

22       Moreover, although "clearly established Federal law" under the AEDPA refers only

23  to holdings of the United States Supreme Court, this Court notes that even under Ninth

24  Circuit precedent, Petitioner would not be entitled to relief.  The Ninth Circuit has held that

25  the admission of "other acts" evidence violates due process only when "there are no

26  permissible inferences the jury may draw from the evidence."  Jammal, 926 F.2d at 920; see

27  Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).  Therefore, whether or not the

28  admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not

1   violate due process unless the evidence is "of such quality as necessarily prevents a fair

2   trial." Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986).

3       As the Arizona Court of Appeals explained, the evidence detailing Petitioner's

4   previous conviction for attempted pandering of a child allowed for a permissible inference

5   – to impeach Petitioner's credibility in light of his testimony on direct examination.

6   Therefore, admission of the evidence did not render Petitioner's trial fundamentally unfair

7   in violation of his due process rights, and the Court will recommend that Petitioner's claim

8   asserted in Ground One be denied and dismissed.

9       **2.    Ground Two**

10      In Ground Two, Petitioner argues that his right to a fair trial was violated when the

11  trial court allowed the introduction of evidence relating to allegations of prostitution

12  involving J.L. and by allowing testimony regarding Petitioner's "PIMP" tattoo. (Doc. 1 at

13  7.)

14      Regarding the allegations of prostitution involving J.L., the record reflects that prior

15  to trial, the trial court ruled that D.H. could not testify that J.L. was a prostitute who also

16  worked for Petitioner. Instead, the court restricted D.H.'s testimony to her observations of

17  J.L. giving Petitioner money. On direct appeal, Petitioner contended that the trial court erred

18  in admitting testimony regarding J.L. giving him money and Petitioner's own statements

19  stating that he was J.L.'s pimp. Petitioner claimed that this evidence was improper character

20  evidence that was admitted in violation of Rule 404(b). (Doc. 11, Exh. B.)

21      In its examination of the record, the appellate court found that the first reference of

22  J.L. working for Petitioner as a prostitute occurred during D.H.'s direct examination. The

23  court noted that Petitioner did not object to any such reference. Then, the court found that

24  during his cross-examination of D.H., Petitioner elicited testimony that he was J.L.'s pimp,

25  and Petitioner subsequently testified that he told police that he was J.L.'s pimp. Thus, the

26  court determined that Petitioner invited any error conceivably committed by the trial court

27  in allowing this evidence. (Doc. 11, Exh. B.)

28

1    As to Petitioner's "PIMP" tattoo, prior to trial, Petitioner requested that the trial court
2    preclude all evidence of his tattoo stating the word "PIMP" along his right forearm.
3    Petitioner argued that the evidence was irrelevant and unduly prejudicial under Rule 403.
4    The trial court denied Petitioner's motion, finding that although evidence of the tattoo might
5    have some prejudicial effect, its probative value was not substantially outweighed by the
6    danger of unfair prejudice.   On appeal, Petitioner contended that the evidence was
7    inadmissible under Rule 404(b).  (Doc. 11, Exh. B.)

8    Reviewing for fundamental error because Petitioner failed to specify at trial that Rule
9    404(b) was the basis for his objection, the appellate court found "no error, let alone
10   fundamental error."  Further, the court stated that "[t]he tattoo is relevant as to Defendant's
11   intent or plan to engage in the charged offenses of child prostitution.  Thus, there was no
12   error."  Lastly, the court stated that "Defendant also cannot satisfy his burden of establishing
13   prejudice resulting from evidence of the tattoo.  Defendant himself admitted to being a pimp,
14   albeit not with respect to children.  Moreover, Defendant testified and argued in closing that
15   the tattoo reflected his trade name as a rap musician: 'Tony Heartbreaker the Pimp.'  The
16   record, therefore, does not reflect Defendant suffered any prejudice attributable to evidence
17   of his 'PIMP' tattoo."  (Doc. 11, Exh. B.)

18   Petitioner again raises the issue of the trial court's application of Rule 404(b) of the
19   Arizona Rules of Evidence.  "A state court's procedural or evidentiary ruling is not subject
20   to federal habeas review unless the ruling violates federal law, either by infringing upon a
21   specific federal constitutional or statutory provision or be depriving the defendant of the
22   fundamentally fair trial guaranteed by due process."  Walters v. Maass, 45 F.3d 1355, 1357
23   (9th Cir. 1995).  Thus, Petitioner cannot prevail on his contention that Rule 404(b) testimony
24   violated his constitutional right to due process of law and denied a fair trial in violation of
25   the Fifth and Fourteenth Amendment unless he shows the state court's decision "was
26   arbitrary or so prejudicial that it rendered the trial fundamentally unfair."  Id.

27   Review of the record demonstrates that the trial court did not render Petitioner's trial
28   fundamentally unfair.  In each of these instances – introduction of evidence relating to

1  allegations of prostitution involving J.L. and allowing testimony regarding Petitioner's
2  "PIMP" tattoo – the Arizona Court of Appeals' determination was a reasonable application
3  of state law and, as such, did not violate Petitioner's due process right to a fair trial.  The
4  Court will recommend that Petitioner's claim asserted in Ground Two be denied and
5  dismissed.

6      **3.      Ground Five**

7      In Ground Five, Petition contends that he was denied effective assistance of counsel
8  in violation of the Sixth Amendment.  Specifically, Petitioner asserts that trial defense
9  counsel rendered ineffective assistance of counsel by failing to: (1) provide him discovery
10 at trial; (2) investigate and interview or call alleged alibi witnesses; (3) file a motion to
11 suppress evidence that was illegally seized; (4) object to a jury instruction that informed the
12 jury that the State was not required to prove the exact date of the offense; and (5) request a
13 hearing pursuant to State ex. rel. Pope v. Superior Court, 545 P.2d 946 (Ariz. 1976) seeking
14 to admit evidence regarding the victim's sexual history.  (Doc. 1 at 10-11.)

15     The two-prong test for establishing ineffective assistance of counsel was established
16 by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In order to prevail
17 on an ineffective assistance claim, a convicted defendant must show (1) that counsel's
18 representation fell below an objective standard of reasonableness, and (2) that there is a
19 reasonable probability that, but for counsel's unprofessional errors, the result of the
20 proceeding would have been different.  See id. at 687-88.

21     Regarding the performance prong, a reviewing court engages a strong presumption
22 that counsel rendered adequate assistance, and exercised reasonable professional judgment
23 in making decisions.  See id. at 690.  "[A] fair assessment of attorney performance requires
24 that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
25 circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's
26 perspective at the time."  Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting
27 Strickland, 466 U.S. at 689).  Moreover, review of counsel's performance under Strickland
28 is "extremely limited": "The test has nothing to do with what the best lawyers would have

1   done.  Nor is the test even what most good lawyers would have done.  We ask only whether

2   some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel

3   acted at trial." <u>Coleman v. Calderon</u>, 150 F.3d 1105, 1113 (9th Cir.), <u>judgment rev'd on other</u>

4   <u>grounds</u>, 525 U.S. 141 (1998).  Thus, a court "must judge the reasonableness of counsel's

5   challenged conduct on the facts of the particular case, viewed as of the time of counsel's

6   conduct."  <u>Strickland</u>, 466 U.S. at 690.

7        If the prisoner is able to satisfy the performance prong, he must also establish

8   prejudice.  <u>See id.</u> at 691-92; <u>see also</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000) (burden

9   is on defendant to show prejudice).  To establish prejudice, a prisoner must demonstrate a

10  "reasonable probability that, but for counsel's unprofessional errors, the result of the

11  proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.  A "reasonable

12  probability" is "a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>  A

13  court need not determine whether counsel's performance was deficient before examining

14  whether prejudice resulted from the alleged deficiencies.  <u>See</u> <u>Robbins</u>, 528 U.S. at 286 n.14.

15  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

16  prejudice, which we expect will often be so, that course should be followed."  <u>Id.</u> (quoting

17  <u>Strickland</u>, 466 U.S. at 697).

18       In reviewing a state court's resolution of an ineffective assistance of counsel claim,

19  the Court considers whether the state court applied <u>Strickland</u> unreasonably:

20       For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ...
     he must do more than show that he would have satisfied <u>Strickland</u>'s test if his
21   claim were being analyzed in the first instance, because under § 2254(d)(1),
     it is not enough to convince a federal habeas court that, in its independent
22   judgment, the state-court decision applied <u>Strickland</u> incorrectly.  Rather, he
     must show that the [state court] applied <u>Strickland</u> to the facts of his case in an
23   objectively unreasonable manner.

24  <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002) (citations omitted); <u>see also</u> <u>Woodford v.</u>

25  <u>Visciotti</u>, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause,

26  a federal habeas court may not issue the writ simply because that court concludes in its

27  independent judgment that the state-court decision applied <u>Strickland</u> incorrectly.  Rather,

28

it is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts

of his case in an objectively unreasonable manner.") (citations omitted).

In his petition for post-conviction relief, Petitioner argued that counsel was ineffective

for the same reasons he asserts in the instant habeas petition. (Doc. 11, Exh. G.) In the last

reasoned state court decision, the court rejected the ineffective assistance claim on the merits

stating, in pertinent part:

> Defendant claims trial counsel failed to call alibi witnesses and failed to file
> various motions. There is a strong presumption that counsel provided effective
> assistance to Defendant. It is conceded that counsel interviewed at least two
> of the alibi witnesses. Counsel's choice not to call these witnesses suggests
> that they may not have supported the alibi defense. Defendant, in fact, provides
> no affidavits or other evidence to suggest what the testimony might have been.
> Therefore, no deficiency in performance can be demonstrated, nor any
> prejudice resulting from failing to call these witnesses at trial.
>
> As to the other claims, Defendant states that counsel did not file certain
> motions or requests but does not state why this was deficient performance or
> that prejudice resulted. Allegations alone are insufficient to support a claim of
> ineffective assistance of counsel.

(Doc. 11, Exh. H.)

Similar to his habeas petition, Petitioner's post-conviction relief petition was replete

with multiple claims and broad allegations that counsel failed to employ the tactics Petitioner

would have chosen with respect to witnesses, evidence, and strategy. Ultimately, the state

court found that Petitioner's claims were conclusory and largely unsupported. Having

reviewed the record, the Court finds that the state court did not unreasonably apply

<u>Strickland</u> in rejecting Petitioner's claim for ineffective assistance of counsel. The Court will

recommend that Petitioner's claim as asserted in Ground Five be denied and dismissed.

First, although Petitioner asserts that trial defense counsel failed to provide him with

discovery, he fails to identify what he was precluded from reviewing and specifically

demonstrate how any such discovery would have aided his defense, let alone establish that

said discovery would have changed the jury's ultimate finding of guilt. Thus, Petitioner's

claim constitutes speculation, which is insufficient to establish deficient performance and

resulting prejudice under <u>Strickland</u>. <u>See</u> 466 U.S. at 687-94; <u>Jones v. Gomez</u>, 66 F.3d 199,

205 (9th Cir. 1995) (stating that conclusory allegations with no reference to the record or

1   other evidence do not warrant habeas relief); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)

2   (holding that conclusory allegations may be summarily rejected).  Thus, the state court's

3   rejection of this claim was neither contrary to, nor an unreasonable application of federal law.

4          Petitioner's claim asserting that defense counsel rendered deficient performance by

5   failing to investigate and interview or call alleged alibi witnesses is equally unavailing.

6   Although Petitioner asserts that the witnesses could have provided testimony regarding the

7   facts of the offense and related evidence, and character references related to witness

8   credibility, Petitioner has failed to provide any information to substantiate his claim.  As the

9   state court correctly determined, Petitioner failed to submit any affidavits, records, or other

10   evidence to suggest what the proposed testimony would have been, or that it would have

11   aided his defense.  See Wade v. Calderon, 29 F.3d 1312, 1316-18 (9th Cir. 1994) (rejecting

12   claim of ineffective assistance where petitioner failed to provide support for allegation that

13   counsel failed to investigate) (overruled on other grounds); United States v. Berry, 814 F.2d

14   1406, 1409 (9th Cir. 1989) (stating that claims that counsel failed to locate or interview

15   witnesses must be accompanied by a showing of what the witnesses would say and how it

16   would change the outcome).

17          Petitioner's claim is further belied by the fact that the record reflects that defense

18   counsel did interview at least two of the witnesses, and yet chose not to call them at trial.

19   (Doc. 11, Exh. H.)  Because Petitioner has presented no evidence to the contrary, the Court

20   presumes that counsel's decision was based upon sound trial strategy.  See Bell, 535 U.S. at

21   698; Strickland, 466 U.S. at 689-90.  Thus, the Court finds that the state court's rejection of

22   this claim was neither contrary to, nor an unreasonable application of federal law.

23          Petitioner's conclusory allegation that trial defense counsel rendered deficient

24   performance by failing to file a motion to suppress evidence, which Petitioner contends was

25   illegally seized, also fails.  Initially, as previously discussed, a petitioner's claims must be

26   factually substantiated, and vague or conclusory claims do not warrant habeas relief.  See,

27   e.g., Jones, 66 F.3d at 205. Petitioner has failed to demonstrate that an illegal search actually

28   occurred, and therefore has failed to establish that a motion to suppress would have

1    succeeded.   See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) ("Where defense

2    counsel's failure to litigate a Fourth Amendment claim competently is the principle allegation

3    of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is

4    meritorious and that there is a reasonable probability that the verdict would have been

5    different absent the excludable evidence in order to demonstrate actual prejudice.").  Further,

6    the record is silent regarding counsel's reasons for not moving to suppress any alleged

7    illegally seized evidence, and Petitioner cannot overcome the presumption of reasonableness

8    without proffering affirmative evidence of counsel's decision-making process.  See Chandler

9    v. U.S., 218 F.3d 1305, 1314 n.15 (11ᵗʰ Cir. 2000); see also Grayson v. Thompson, 257 F.3d

10   1194, 1218 (11ᵗʰ Cir. 2001) (defendant could not show deficient performance where record

11   was silent regarding counsel's reason for not filing motion to suppress, and court would

12   presume counsel acted reasonably).   Thus, the state court did not unreasonably apply

13   Strickland in rejecting this claim.

14        Additionally, regarding Petitioner's claim that counsel rendered deficient performance

15   for failing to object to an instruction informing the jury that "the State need not prove the

16   exact dates on which the child prostitution ... occurred.  It is sufficient for the State to prove

17   that the crimes occurred on or about a range of dates," it is well established in Arizona that

18   the prosecution need not prove the exact date of a crime when the elements of the offense do

19   not include the date of the offense's commission.  See State v. Jones, 937 P.2d 1182, 1192

20   (Ariz. App. 1996) (overruled on other grounds) ("[E]xact dates are not required so long as

21   they are within the statute of limitation and no prejudice is shown.") (quoting United States

22   v. Austin, 448 F.2d 399, 401 (9ᵗʰ Cir. 1971)); see also State v. Verdugo, 510 P.2d 37, 38-39

23   (Ariz. 1973) ("It has been held repeatedly that it is sufficient under the law that the precise

24   time of the act is unnecessary to be proven, if it is alleged that it occurred 'on or about' a

25   given date. ... The exact time [is] not a material ingredient of the crime, unless it deprive[s]

26   the defendant of his defense of alibi.").

27        In the present case, the elements of the offense did not include the date of commission,

28   and Petitioner did not pursue an alibi defense on any count, but rather, he defended on the

1   theory that the victim fabricated the allegations, was on drugs, is bi-polar, and/or had been
2   manipulated by the police.  (Doc. 11, Exh. D at 138-43.)  Accordingly, the State was not
3   required to prove the exact date of the offense beyond a reasonable doubt.  As such, defense
4   counsel's failure to object to the challenged instruction did not constitute deficient
5   performance.  See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a
6   futile action can never be deficient performance").  The state court's rejection of this claim
7   was neither contrary to, nor an unreasonable application of federal law.

8        Finally, Petitioner's assertion that counsel rendered deficient performance that
9   resulted in prejudice by failing to request a hearing pursuant to State ex. rel. Pope v. Superior
10  Court, 545 P.2d 946 (Ariz. 1976), fails.  In Pope, the Arizona Supreme Court held that
11  "character evidence concerning unchastity is inadmissible to impeach the credibility of a
12  prosecutrix in a forcible rape prosecution."  Id. at 948-53.  The court, however, recognized
13  a limited number of circumstances under which evidence of the victim's sexual history could
14  be relevant.  See id. at 953.

15       For example, the court specifically noted that "evidence concerning unchastity would
16  be admissible in conjunction with an effort by the defense to show that the complaining
17  witness has made unsubstantiated charges of rape in the past."  Id.  The court further directed
18  trial courts, before admitting such evidence, to hold a hearing outside the jury's presence to
19  determine whether "the evidence concerning unchastity is alleged to be sufficiently probative
20  to compel its admission despite its inflammatory effect."  Id.  Several years after Pope, the
21  Arizona Court of Appeals summarized the factors a trial court should consider before
22  deeming evidence of a victim's sexual history admissible under Pope:

23       The correct application of *Pope* requires critical scrutiny of (1) the validity of
         defendant's probative theory; (2) the evidence defendant seeks to admit, as
24       detailed by offer of proof; (3) the tendency of that evidence to support
         defendant's probative theory; and (4) the inflammatory or diversionary risks
25       of placing such evidence before the jury.  Moreover, where both probative
         value and prejudicial potential are found, *Pope* does not require wholesale
26       prescription.  Rather, inquiry must turn to whether the probative benefit may
         be preserved and the risks of unfair prejudice minimized by careful restrictions
27       on the scope or details of the proof. ... In ruling on these difficult questions, the
         court must be mindful of *Pope's* purpose to reduce the trauma and humiliation
28       of the criminal process for the victims of sexual crimes; yet the court must also

meet its constitutional obligation to preserve the defendant's rights to cross-examine and defend.

State v. Castro, 788 P.2d 1216, 1220-21 (Ariz. App. 1989) (internal citation omitted).

Here, the state court's rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of Strickland. Petitioner has made no offer of proof regarding the victim's sexual history or any prior false allegations, let alone establish that any such evidence would have somehow been relevant and admissible under A.R.S. § 13-1421.[8] Thus, defense counsel could not have rendered deficient performance for failing to request a Pope hearing in the absence of evidence supporting such a request. The Sixth Amendment did not require defense counsel to make a futile, frivolous, and unavailing request for a Pope hearing, or a factually unsubstantiated offer of proof. See, e.g., Borg, 24 F.3d at 27 ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel."); United States v. Quintero-Barraza, 78 F.3d 1344, 1349 (9th Cir. 1996) ("Counsel was under no obligation to bring a plainly unavailing motion before the district court.").

---

[8]   The Arizona legislature codified Pope at A.R.S. § 13-1421, which states, in pertinent part:

> A. Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for any offense in this chapter. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if a judge finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence, and if the evidence is one of the following:
>
> 1. Evidence of the victim's past sexual conduct with the defendant.
> 2. Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease or trauma.
> 3. Evidence that supports a claim that the victim has a motive in accusing the defendant of the crime.
> 4. Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.
> 5. Evidence of false allegations of sexual misconduct made by the victim against others.

1    Regardless, Petitioner's claim is ultimately speculation, unsupported by the record,

2   and thus, insufficient to satisfy his substantial burden under Strickland. See 466 U.S. at 687-

3   94; Gomez, 66 F.3d at 205.

4        **4.    Ground Eight**

5    In Ground Eight, Petitioner alleges that his post-conviction counsel was ineffective

6   in violation of the Sixth Amendment.   Specifically, Petitioner contends that appointed

7   counsel rendered deficient performance by failing to raise the following claims in his petition

8   for post-conviction relief: (1) prosecutorial misconduct; (2) judicial abuse of discretion; and

9   (3) ineffective assistance of trial counsel.  (Doc. 1 at 17-19.)

10    Petitioner raised this same claim in his petition for post-conviction relief.  (Doc. 11,

11   Exh. G.)  In the last reasoned state court decision, the court rejected the ineffective assistance

12   of post-conviction counsel claim stating, in pertinent part:

13        As to the claim of ineffective assistance of post-conviction counsel, appointed
         counsel indicated he reviewed Defendant's file at the Court of Appeals and
14        found no issues or colorable claims. Defendant has not supported his claim
         with affidavits or other records.
15
   (Doc. 11, Exh. H.)  The state court then denied Petitioner's claim.  (Doc. 11, Exh. H.)
16
         Section 2254(i) expressly states that "[t]he ineffectiveness or incompetence of counsel
17
   during Federal or State collateral post-conviction proceedings shall not be a ground for relief
18
   in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  Moreover, the United
19
   States Supreme Court has held that "[t]here is no constitutional right to an attorney in state-
20
   post conviction proceedings. ... Consequently, a petitioner cannot claim constitutionally
21
   ineffective assistance of counsel in such proceedings."  Coleman, 501 U.S. at 752.  See also
22
   Bonin v. Jeffers, 999 F.2d 425, 430 (9th Cir. 1993) ("the protections of the Sixth Amendment
23
   right to counsel do not extend to either state collateral proceedings or federal habeas corpus
24
   proceedings.").  Consequently, Petitioner's claim of ineffective assistance of counsel during
25

26

27

28

state post-conviction relief proceedings does not state a cognizable claim for federal habeas relief.[9]  The Court will recommend that Ground Eight be denied and dismissed.

## CONCLUSION

Having determined that Ground Four fails to state a basis for federal habeas relief; Grounds Three, Six, and Seven are procedurally defaulted; and Grounds One, Two, Five, and Eight fail on the merits, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

---

[9]  The Court notes that the Supreme Court's recent decision in Martinez v. Ryan, 132 S.Ct. 1309 (2012) did not create a constitutional right to effective post-conviction counsel, but rather created a narrow exception to the Court's holding in Coleman stating,

> This is not the case, however, to resolve whether that exception exists as a constitutional matter. The precise question here is whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding. To protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default. This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.

Martinez, 132 S.Ct. at 1315.

1   This recommendation is not an order that is immediately appealable to the Ninth
2   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
3   Appellate Procedure, should not be filed until entry of the district court's judgment.  The
4   parties shall have fourteen days from the date of service of a copy of this recommendation
5   within which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1);
6   Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen
7   days within which to file a response to the objections.  Failure timely to file objections to the
8   Magistrate Judge's Report and Recommendation may result in the acceptance of the Report
9   and Recommendation by the district court without further review.  See United States v.
10  Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any
11  factual determinations of the Magistrate Judge will be considered a waiver of a party's right
12  to appellate review of the findings of fact in an order or judgment entered pursuant to the
13  Magistrate Judge's recommendation.  See Rule 72, Federal Rules of Civil Procedure.
14      DATED this 9th day of April, 2013.

                                    Michelle H. Burns
                                    Michelle H. Burns
                                    United States Magistrate Judge